HARDY, APPELLANT, *v.*
OSBORN, APPELLEE.

(No. 54260 — Decided
September 12, 1988.)

*Ronald K. Riley,* for appellant Janet Hardy.

*John S. Rea,* for appellee Lisa M. Osborn.

MARKUS, P.J. The plaintiff appeals from the denial of her motion for new trial, after a judgment in her favor for allegedly inadequate damages. She argues that the jury mistakenly listed her special damages instead of the total damages in their interrogatory answers for her personal injury action. However, the jurors' affidavits to that effect cannot contradict the written interrogatory answer, so we reject that contention. Nevertheless, we unanimously conclude that the jury's interrogatory answer and the resulting judgment were contrary to the manifest weight of the evidence. Consequently, we recognize that unassigned plain error and reverse the damage portion of the judgment.

I

In this intersection collision case, the plaintiff contended that the defendant failed to yield the right of way before turning left in front of her oncoming car. The defendant claimed that the plaintiff failed to have her headlights on when this nighttime collision occurred.

The plaintiff's undisputed evidence established that she sustained multiple injuries, including a severe facial laceration, which required plastic surgery that left a visible facial scar. She also sustained major dental damage, including three fractured teeth and lacerations of her gums. She presented stipulated or unchallenged evidence of medical, surgical, dental, ambulance, and hospital bills, together with proof of her resulting lost days from work.

In its instructions to the jury, the court directed them to determine "the total amount of damages sustained." The court said:

"In determining this, you will determine the nature and extent of the injuries, the effect thereof on the Plaintiff's physical and emotional health, the pain and suffering that was experienced, the reasonable value of these medical and professional expenses incurred by the Plaintiff, her ability to perform her usual and normal activities. From these considerations you will determine what sum will  .

compensate the Plaintiff for her injuries to date.

"The Plaintiff, Janet Hardy, claims that her injuries are permanent and the she will thus incur further expenses and pain and suffering in the future."

At the conclusion of its jury instructions, the court asked whether counsel had "any objections, corrections, additions, deletions, or comments." Plaintiff's counsel responded "None, Your Honor." When defendant's counsel suggested some additional language, plaintiff's counsel stated:

"I personally feel that the charge, as given, has been more than adequate, that any further delineation of terms would merely complicate it for the Jury, and I don't believe that it is appropriate at this time."

In their answers to comparative negligence interrogatories, the jury found the defendant seventy-eight percent responsible and the plaintiff twenty-two percent responsible for the plaintiff's injuries. They also found that $7,175.27 "was the total amount of damage sustained by the plaintiff, regardless of which party caused it." A sufficient number of jurors signed each of the interrogatories.

When the jury returned those answers to interrogatories, it also returned two verdict forms signed by seven jurors. One form reported a verdict for the plaintiff; the second reported a verdict for the defendant. After consulting with counsel, the court asked the jurors whether the interrogatory answers correctly reported their findings that plaintiff was twenty-two percent negligent and defendant was seventy-eight percent negligent. They answered, "Yes." The court then directed them to return to their deliberation room where they could reject one of the two inconsistent verdict forms. On the basis of the percentage of negligence and their interrogatory answers, the court suggested that jurors strike their names from the defense verdict form.

Apparently at the request of plaintiff's counsel, the court also asked whether the amount reported as "the total amount of damage sustained by the plaintiff" was their finding. Again, the jury answered, "Yes." Thereafter, the court reconfirmed their agreement to the other interrogatory answers and then requested them to retire and correct the verdict forms. They did so and struck their signatures from the verdict for the defendant.

The court then entered its judgment for seventy-eight percent of $7,175.27.

## II

The plaintiff's sole assigned error contests the trial court's refusal to grant a new trial. The plaintiff supported her motion for that relief with affidavits from the eight jurors who had signed the interrogatory about "the total amount of damage sustained by the plaintiff." These identical affidavits, which plaintiff's counsel presumably prepared, included the following statements:

"7. Following our dismissal, I learned that a mistake was made as to the amount of the damages the Plaintiff was to receive.

"8. As I listened to the instructions as given by the Judge, it was my understanding that the amount to be written in interrogatory number 1 was the damages incurred to date by the Plaintiff. I was not aware, nor were the rest of the jurors, that I was to include the *total* amount that the Plaintiff was to receive.

"9. I had wanted to provide the Plaintiff with an award of Fifty Thousand Dollars ($50,000.00) minus the comparative negligence found by the jury to be placed on the Plaintiff.

"10. I, and the rest of the jurors, found the Plaintiff to be twenty-two

percent (22%) negligent and the Defendant to be seventy-eight percent (78%) negligent.

"11. With this amount, I expected the Plaintiff to receive a total of Thirty-Nine Thousand Dollars ($39,000.00) and *not* a percentage of just her medical bills.

"12. I believe that this error was caused solely by the fault that I did not understand the lengthy instructions provided by Judge Carroll, for had I understood, this mistake would not have been made, and the Plaintiff would not be prejudiced."

The plaintiff neither contended nor offered any evidence that any "extraneous prejudicial information was improperly brought to the jury's attention." See Evid. R. 606(B). Likewise, the plaintiff neither contended nor offered any evidence that "any outside influence was improperly brought to bear on any juror." *Id.* The plaintiff did not claim any "threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court." *Id.*

Thus, the plaintiff's challenge to the interrogatory answers concerns the effect of the court's instructions upon the jurors' minds. A juror cannot testify or provide an affidavit about such matters upon an inquiry into the validity of a verdict even with related evidence *aliunde. Id.; Cleveland Elec. Illum. Co.* v. *Astrohurst Land Co.* (1985), 18 Ohio St. 3d 268, 18 OBR 322, 480 N.E. 2d 794, paragraph three of the syllabus. The rationale which precludes a juror's testimony to explain or alter the verdict applies equally to a juror's testimony or affidavit about an interrogatory answer. Cf. *Stevens* v. *Cessna Aircraft Co.* (E.D. Pa. 1986), 634 F. Supp. 137.

The plaintiff offered no competent evidence to support the jurors' alleged misunderstanding, so we must overrule the assigned error.

## III

At the same time, we recognize that the jury could not have properly found that the plaintiff's *total* damages were $7,175.27. That amount represented essentially undisputed special damages, without any valuation of undisputed general damages for pain, suffering, disability and disfigurement. Hence the jury's finding as to the total damages was contrary to the manifest weight of the evidence. Cf. *Toledo Railways & Light Co.* v. *Mason* (1910), 81 Ohio St. 463, 91 N.E. 292, paragraph one of the syllabus; *Kuhn* v. *Moses* (Apr. 3, 1975), Cuyahoga App. No. 33742, unreported.

The plaintiff demonstrated no error regarding the jury's findings as to the respective fault of the parties. Therefore, we reverse the trial court's judgment and remand the case for a partial new trial on the sole issue of the total damages which the plaintiff sustained. When that amount is determined, the trial court will enter its judgment by applying the percentages of fault which the first jury found, in accordance with the comparative negligence laws.

*Judgment reversed
and cause remanded.*

STILLMAN and DODD, JJ., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, and DONALD L. DODD, J., of the Champaign County Court of Common Pleas, sitting by assignment.