[Cite as *McGugan v. Olszewski*, 2020-Ohio-4992.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ZECHARIAH MCGUGAN,  :

    Plaintiff-Appellant,  :

                No. 109099

v.  :

PATRICIA A. OLSZEWSKI,  :

    Defendant-Appellee.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 22, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-899710

---

***Appearances:***

Law Office of J. Michael Goldberg L.L.C. and J. Michael Goldberg, *for appellant.*

Ankuda, Stadler & Moeller, Ltd. and Colin P. Moeller, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant Zechariah McGugan ("McGugan") appeals the amount of damages awarded by the jury, and asks this court to remand for a new trial to determine the proper amount of damages. We affirm the jury's award.

## I.    Facts and Procedural History

{¶ 2}    On December 11, 2017, defendant-appellee Patricia A. Olszewski ("Olszewski") was involved in a motor accident with McGugan, where Olszewski's negligence caused the accident as her vehicle traveled into the path of McGugan's motorcycle.  Although Olszewski's vehicle did not strike McGugan's motorcycle, because of her negligent actions, McGugan was forced to lay down his motorcycle, causing him physical injury.  McGugan was transported by ambulance to the hospital, where he was treated for a soft-tissue sprain on his left foot.  He also suffered road rash to his elbow and knee.  McGugan was given a prescription for pain medication but never filled it.  He was also referred to a podiatrist, whom he never contacted.

{¶ 3}    In addition to the physical injuries, McGugan stated he also suffered recurring nightmares of the accident.  Because of persistent pain, McGugan saw an orthopedic doctor in January 2018.  The doctor diagnosed McGugan with acute pain of the left knee, and referred McGugan to physical therapy to strengthen his knee.  McGugan attended eight physical therapy sessions and his pain lessened.  At the conclusion of his physical therapy, McGugan stated to his physical therapist that he was riding his motorcycle again and that he had returned to running three miles at an 8:30 minute pace.  After completion of McGugan's physical therapy, he did not see any other medical professionals regarding his injuries from the accident.

{¶ 4}    In May 2018, McGugan completed a 20-day, 6,000-mile motorcycle ride from Cleveland to Florida.  Thereafter, McGugan completed a 1,000-mile

motorcycle trip from Cleveland to Colorado, and then to Utah. At trial, McGugan testified that his knee pain was a one on a scale of one to ten.

{¶ 5} Prior to the trial, Olszewski formally stipulated that her negligence was the cause of the accident. Although Olszewski's vehicle traveled into the path of McGugan's motorcycle, Olszewski's vehicle never made contact with the motorcycle. On June 5, 2019, McGugan's case went to trial where he did not call any medical experts or treatment providers to testify, but his medical records were admitted as a joint exhibit. McGugan and his roommate testified on his behalf. McGugan's roommate testified that McGugan was injured and complained of having nightmares, and that McGugan was not as active as he had been before the accident. McGugan's roommate further testified that McGugan became more of a homebody after the crash, not socializing with friends like he used to before the accident. At the conclusion of trial and during jury deliberations, the jury submitted two questions to the trial court. The jury asked: (1) if Olszewski's insurance covered any medical and repair bills; and (2) if the lawsuit was personal or an insurance lawsuit. The trial court, with the consent of both counsel, instructed the jury to decide the case only on the evidence presented. The jury returned with a verdict in favor of McGugan for noneconomic damages of $10,000.

{¶ 6} On July 5, 2019, McGugan filed a motion for a new trial on damages only, and the trial court denied that motion on September 9, 2019.[1] McGugan filed

---

[1] McGugan did not file an appeal regarding the trial court's denial of his motion for a new trial.

this appeal, appealing the jury's verdict.  McGugan has assigned two errors for our review:

> I.   The judgment as to the amount of damages awarded by the jury is against the manifest weight of the evidence, where inadequate damages appear to have been given under the influence of passion or prejudice, and;
>
> II.  The judgment as to the amount of damages is against the manifest weight of the evidence, where the jury rendered an inadequate award for general damages.

## II.   Manifest Weight of the Evidence

{¶ 7}  In McGugan's assignments of error, he argues that the jury's award of $10,000 is against the manifest weight of the evidence.

> When reviewing the manifest weight of the evidence in a civil case, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.  A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

*Austin v. Chukwuani*, 2017-Ohio-106, 80 N.E.3d 1199, ¶ 44 (8th Dist.).

{¶ 8}  The presumption is that the jury's findings are correct because they had the opportunity "'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'"  *Id.* at ¶ 46, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶ 9}** The "weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Id.* at ¶ 45, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶ 10}** McGugan argues that the jury lost its way when it awarded him just $10,000 in damages, and because of the jury's verdict, the trial court must grant a new trial under Civ.R. 59(A)(4), which states, "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."

**{¶ 11}** McGugan contends that the jury appeared to be under the influence of passion or prejudice because it rendered a verdict less than two minutes after receiving the court's answers to the two questions posed during jury deliberations. The jury questions were (1) if Olszewski's insurance covered any medical or repair bills; and (2) if the lawsuit was personal or insurance related. Before posing the two questions to the trial court, the jury deliberated for almost an hour.

**{¶ 12}** With regard to jury deliberations,

> "'the verdict should be the result of sound judgment, dispassionate consideration, and conscientions [sic] reflection * * *.'" [*Val Decker Packing Co. v. Treon*, 88 Ohio App. 479, 489, 97 N.E.2d 696 (2d Dist.1950)], quoting 64 Corpus Juris, Section 808, at 1019. "Brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." *Wilburn v. Eastman Kodak Co.*, 180 F.3d 475, 476 (2d Cir.1999). "There is no statutory provision prescribing the length of time a jury shall deliberate before reaching a verdict." *Val Decker* at 489. "'[W]here

the law does not positively prescribe the length of time a jury shall consider their verdict, they may render a valid verdict without retiring, or on very brief deliberation after retiring * * *.'" *Val Decker* at 489, quoting 64 Corpus Juris, Section 808, at 1019.

(Citations omitted.) *State v. Thompson*, 2d Dist. Montgomery No. 26954, 2016-Ohio-7521, ¶ 69 quoting *State v. Brown*, 2d Dist. Champaign No. 2015-CA-21, 2016-Ohio-4573, ¶ 9.

{¶ 13} Additionally, "[t]he length of time a jury should deliberate and whether it should be returned for further deliberations is a matter generally within the discretion of the trial judge." *State v. Sherman*, 6th Dist. Sandusky No. S-87-9, 1987 Ohio App. LEXIS 8835 (Sept. 25, 1987), citing *State v. Swanson*, 9 Ohio App.2d 60, [222 N.E.2d 844] (8th Dist.1967); *Dobbins v. State*, 14 Ohio St. 493 [1863 Ohio LEXIS 96] (1863). The length of jury deliberations is generally not relevant, and a verdict is presumed valid. *See, e.g.*, *D.E. Barnes, Inc. v. Schwemlein*, 4th Dist. Ross No. 872, 1982 Ohio App. LEXIS 14077 (June 9, 1982). Therefore, we find the argument regarding the length of deliberations has no merit.

{¶ 14} Despite McGugan's arguments or contentions, we must then weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. McGugan argues that the jury did not fully compensate him for the injuries he suffered as a result of the negligence of Olszewski.

{¶ 15} McGugan's physical injuries included a soft-tissue sprain on his left foot, road rash on his elbow and knee, and acute knee pain. He had to attend physical therapy for eight sessions, and after physical therapy, he returned to running miles and riding his motorcycle for thousands of miles. While McGugan testified that he had recurring nightmares for months after the crash, he also testified that he did not fill the prescription for pain medication and did not see the podiatrist that he was referred to by the emergency-room doctor. The record supports the fact that medical experts did not testify as to the extent of McGugan's injuries or even testify at all. Finally, McGugan acknowledged in his brief that he did not seek compensation for his medical bills and made no claim for lost wages.

{¶ 16} McGugan asked the jury to award damages for his pain and suffering only, and the jury awarded him $10,000. "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice * * *." *Kassay v. Niederst Mgt.*, 2018-Ohio-2057, 113 N.E.3d 1038, ¶ 45 (8th Dist.), quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994). "Instead, 'there must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury.'" *Kassay* at ¶ 46, quoting *Pesic v. Pezo*, 8th Dist. Cuyahoga No. 90855, 2008-Ohio-5738, ¶ 23.

{¶ 17} In examining all of the evidence, McGugan has not demonstrated that the jury lost its way or was under the influence of passion or prejudice.

> "[T]he assessment of damages is generally within the purview of the jury. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994); *Weidner v. Blazic*, 98 Ohio App.3d 321, 334, 648 N.E.2d 565 (1994). The jury's verdict will not be disturbed absent an affirmative showing of passion or prejudice. *Moskovitz* at 655. Passion or prejudice is shown where the jury's assessment of damages is so overwhelmingly disproportionate as to shock reasonable sensibilities. *Pena v. N.E. Ohio Emergency Affiliates*, 108 Ohio App.3d 96, 104, 670 N.E.2d 268 (1995). "The mere size of the verdict is insufficient to establish proof of passion or prejudice." *Id.*

*Technical Constr. Specialties v. Cooper*, 8th Dist. Cuyahoga No. 96021, 2011-Ohio-5252, ¶ 18.

{¶ 18} We find that McGugan has not demonstrated that the jury's assessment of his damages is so overwhelmingly disproportionate as to shock reasonable sensibilities. We find no evidence of passion and prejudice and therefore, will not disturb the jury's verdict regarding this issue.

{¶ 19} McGugan's first assignment of error is overruled.

{¶ 20} McGugan also argues that the jury rendered an inadequate award for general damages. "General damages have been defined as those damages that 'naturally and necessarily result from a wrongful act and which are directly traceable to, and the probable and necessary result of, injury caused by that act.'" *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. Franklin No. 02AP-454, 2003-Ohio-3334, ¶ 127, quoting *Homes By Calkins, Inc. v. Fisher*, 92 Ohio App.3d 262, 267, 634 N.E.2d 1039 (12th Dist.1993).

{¶ 21} McGugan cites our decisions in *Riedel v. Akron Gen. Health Sys.*, 2018-Ohio-840, 97 N.E.3d 508 (8th Dist.), and *Tenaglia v. Russo*, 8th Dist.

Cuyahoga No. 87911, 2007-Ohio-833, to support his contentions. In *Riedel*, the appellee, Aaron Riedel ("Riedel") and his daughters filed a medical malpractice against his doctor and the hospital. Riedel complained that the untimely diagnosis of his spinal epidural abscess was the cause of his incomplete paraplegia. *Riedel* at ¶ 3. "[T]he jury issued a verdict against appellants, jointly and severally. Riedel was awarded $5,200,000 in economic damages, but no noneconomic damages. Each daughter was awarded $200,000 in noneconomic damages for the loss of consortium claims." *Id.* at ¶ 4. Riedel filed a motion for a new trial to be awarded noneconomic damages.

{¶ 22} The trial court granted the motion for a new trial on noneconomic damages, explaining that:

> In *Ford v. Sekic*, [8th Dist. Cuyahoga No. 98835], 2013-Ohio-1895, ¶ 13, the Eighth District Court of Appeals acknowledged that "when a plaintiff receives damages for medical expenses but does not receive an award of damages for past pain and suffering, and where there is evidence supporting such damages, such judgment is against the manifest weight of the evidence," quoting *Juarez v. Osterman*, 10th Dist. Franklin No. 98 AP-1221, 1999 Ohio App. LEXIS 6536 (Aug. 12, 1999). *See also Cooper v. Moran*, 11th Dist. [Lake] No. 2010-L-141, 2011-Ohio-6847, ¶ 21-23; *Boldt v. Kramer*, 1st Dist. [Hamilton] No. C-980235, 1999 Ohio App. LEXIS 2140 (May 14, 1999). The court went on to say that "under circumstances where a substantial injury is sustained and there is unrefuted evidence of pain and suffering, courts have found that an award for medical expenses without any valuation for pain and suffering is against the manifest weight of the evidence." *Id. See Cooper* at ¶ 21-22; *Garaux v. Ott*, 5th Dist. [Stark] No. 2009 CA 00183, 2010-Ohio-2044, ¶ 26; *Hardy v. Osborn*, 54 Ohio App.3d 98, 560 N.E.2d 783 (8th Dist.1988). The court found that "a new trial on that issue alone is necessary to make the injured party whole." *Id.*, quoting *Couture v. Toledo Clinic, Inc.*, [6th Dist. Lucas No. L-07-1277], 2008-Ohio-5632, [¶ 31].

*Id.* at ¶ 8.

{¶ 23} In our decision in *Riedel*, there was evidence presented supporting noneconomic damages, the sustaining of a substantial injury and unrefuted evidence of pain and suffering, and a jury's award that included medical expenses. We determined that an award without any valuation for pain and suffering is against the manifest weight of the evidence. However, the facts and decision in *Riedel* can be distinguished from the facts in the instant case. First, McGugan *was* awarded noneconomic damages of $10,000. Second, McGugan has not submitted evidence of a substantial injury. Finally, McGugan did not seek medical damages or loss wages.

{¶ 24} Next, in *Tenaglia*, Doris and Francis Tenaglia ("the Tenaglias") were involved in an automobile accident with the appellant, Christine Russo ("Russo"), and sustained severe injuries. Francis's medical expenses totaled $1,365, and Dora's medical expenses totaled over $28,000. At the end of the trial, the jury awarded Francis $1,500 and Dora $7,500. After the verdict, the Tenaglias moved for a new trial, and after a hearing, the trial court granted the motion. "In its journal entry granting the Tenaglias' motion, the trial court specifically found that the damages were inadequate, the judgment was against the manifest weight of the evidence, and that Russo made misrepresentations to the jury." *Tenaglia*, 8th Dist. Cuyahoga No. 87911, 2007-Ohio-833, at ¶ 12.

{¶ 25} Russo appealed, arguing that the trial court erred when granting the motion for a new trial. The appellate court ruled against Russo stating,

Dora Tenaglia presented claims for medical bills greatly in excess of the verdict, in addition to the testimony of her pain and suffering. Specifically, her medical bills relating to her shoulder surgery exceeded $ 28,000 and were supported by professional testimony during trial. While Francis Tenaglia's medical bills were slightly lower than the jury award, the trial court correctly found this amount to be inadequate. Based on this record, we agree with the trial court that the jury's verdict of $ 1,500 and $ 7,500 appears illogical and is against the manifest weight of the evidence.

*Id.* at ¶ 25.

{¶ 26} The court decided that the trial court did not abuse its discretion in granting a motion for a new trial because "there exists competent, credible evidence to support the trial court's conclusion" and "the jury's verdict was inadequate and against the manifest weight of the evidence." *Id.* at ¶ 26.

{¶ 27} *Tenaglia* can be distinguished from our instant case. Although McGugan presented testimony regarding pain and suffering, he did not offer expert testimony regarding his injuries and did not present any evidence of medical bills to the jury. Dora Tenaglia's medical bills far exceeded her award of damages. Francis Tenaglia's medical bills were slightly below his award and therefore, the trial court found that the award was inadequate. As stated previously, there are no medical bills in the instant case that were presented to the jury to make a determination of a measurement of an award. Additionally, the two cases that McGugan cites in his brief are cases in which appeals were sought on the grounds that the trial court erred by granting a motion for a new trial as to damages.

The decision whether to grant a new trial pursuant to Civ.R. 59(A) rests within the sound discretion of the trial court. *Buck v. Canacci*, [11th Dist.] Lake No. 96-L-185, 1997 Ohio App. LEXIS 5236 (Nov. 21,

1997). Accordingly, an appellate court will not reverse a trial court's decision absent an abuse of that discretion.

*Tenaglia*, 8th Dist. Cuyahoga No. 87911, 2007-Ohio-833, at ¶ 15.

{¶ 28} McGugan did not appeal the trial court's denial of a new trial. Instead, McGugan focuses solely on the jury's decision regarding general damages.

{¶ 29} We find McGugan has not demonstrated that the jury's award of $10,000 was against the manifest weight of the evidence.  We overrule McGugan's second assignment of error.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR